# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 23-229

**UNICORP, LLC**

**VERSUS**

**BRADD, LLC**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2021-1293
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT
JUDGE**

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Charles G. Fitzgerald, Judges.

**REVERSED AND REMANDED.**

**Jeffrey K Prattini**
**Prattini Law Firm, L.L.P.**
**300 Board of Trade Place**
**New Orleans, LA 70130**
**(504) 754-6600**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    Unicorp, LLC

**Cody C. Bailey (Admitted *Pro Hac Vice*)**
**Brunini, Grantham, Grower & Hewes, PLLC**
**Post Office Drawer 119**
**Jackson, Mississippi 39205**
**Telephone: (601) 948-3101**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **Unicorp, LLC**

**Darren A. Patin**
**Hailey, McNamara**
**3445 N. Causeway Blvd, Suite 800**
**Metairie, LA 70002**
**(504) 836-6500**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **BRaDD, LLC**

**Timothy O'Dowd**
**O'Dowd Law Firm, LLC**
**924 Hodges Street**
**Lake Charles, LA 70601**
**(337) 310-2304**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **BRaDD, LLC**

**Merrick "Rick" J. Norman, Jr.**
**Taylor, Porter, Brooks, & Phillips, LLP**
**145 East Street**
**Lake Charles, LA 70601**
**(337) 436-7781**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **BRaDD, LLC**

**John T. Andrishok**
**Taylor, Porter, Brooks & Phillips, LLP**
**450 Laurel Street, 8th Floor**
**Baton Rouge, LA 70801**
**(225) 381-0285**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **BRaDD, LLC**

**PICKETT, Judge.**

The owner of an apartment complex appeals the trial court's judgment granting summary judgment in favor of the contractor that constructed the complex and ordering the owner to pay the contractor funds retained by the owner's lender in accordance with the parties' contracts. For the following reasons, the trial court's judgment is reversed.

## FACTS

On December 20, 2017, BRaDD, LLC contracted with Unicorp, LLC to build the Erdace Apartments in Lake Charles. BRaDD funded construction of the project with a loan by Greystone Servicing Corporation, Inc. (Greystone) that is insured by the Federal Housing Administration (FHA), which is overseen by the U.S. Department of Housing and Urban Development (HUD). BRaDD and Unicorp signed two contracts with each other that bear on the issues presented herein:  a HUD Construction Contract (the Construction Contract) and AIA® Document A201–2007 General Conditions of the Contract for Construction (the General Conditions).[1]

The Construction Contract included a Retainage Reduction Rider that provides for "the holdback of ten percent (10%) as set out in Item (4) of Article 5, paragraph A of the Construction Contract."[2] The ten percent holdback was retained

---

[1] "AIA®" is an acronym for "The American Institute of Architects."

[2] Article 5(A) of the Construction Contract states:

> A. Each month after the commencement of Work hereunder, Contractor shall make a monthly request on HUD-92448 for payment by Owner for Work done during the preceding month. . . . Subject to the approval of Lender and HUD, Contractor shall be entitled to payment thereon in an amount equal to (1) the total value of classes of the Work acceptably completed; plus (2) the value of materials and equipment not incorporated in the Work, but delivered to and suitably stored at the site; plus (3) the value of components stored off -site in compliance with Program Obligations; less (4) ten (10) percent holdback [as this percentage may be reduced in accordance with the provisions of the Retainage Reduction Rider

as provided in the Retainage Reduction Rider. In March 2020, Unicorp filed a motion for partial summary judgment seeking to recover immediately retained funds totaling $3,214,711. Unicorp sought to have BRaDD release the retained funds pursuant to the terms of Section 9.8.5 of the General Conditions. BRaDD resisted Unicorp's demand, arguing that Article 5 of the Construction Contract governs the release of the retained funds and that Unicorp failed to comply with the requirements of that provision.

After conducting two hearings on the motion, the trial court granted Unicorp's motion and signed a judgment against BRaDD awarding Unicorp $3,214,711, together with legal interest thereon from March 28, 2022. The trial court designated the judgment as a final judgment, subject to immediate appeal as provided in La.Civ.Code art. 1915(B)(1). BRaDD appealed the judgment, asserting that the trial court erred in granting judgment in favor of Unicorp. On appeal, BRaDD urges that the judgment violates provisions of the Construction Contract.

## STANDARD OF REVIEW

"The determination of whether the words of a contract are clear and explicit or ambiguous is a question of law." *Admin-Media, LLC v. AC of Lafayette, L.L.C.*, 19-691, p. 6 (La.App. 3 Cir. 3/11/20), 297 So.3d 44, 49. Accordingly, appellate review in a case of contract interpretation is de novo with the appellate court determining whether the trial court interpreted the contract correctly or incorrectly. *Johnson v. Allstate Prop. & Cas. Ins. Co.*, 21-552 (La.App. 3 Cir. 4/27/22), 338 So.3d 109. "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." La.Civ.Code art. 1983. "Interpretation of a

---

attached hereto, if applicable](or as reduced by HUD in writing) and less (5) prior payments.

2

contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.

## DISCUSSION

Unicorp argues that the General Conditions govern the issues presented by its motion for summary judgment, while BRaDD contends that the Construction Contract governs these issues. Specifically, Unicorp argues that Section 9.8.5 of the General Conditions obligated BRaDD to pay immediately the withheld retainage when the contracted work was substantially complete, as defined by that provision. Section 9.8.5 states:

> The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

Unicorp and BRaDD accepted the responsibilities assigned to each of them by a Certificate of Substantial Completion dated June 3, 2020. Additionally, Unicorp served a List of Material Facts not in Dispute on BRaDD which included the following:

> BRaDD agreed to and accepted the Certificates of Substantial Completion, and the surety consented to the release of all retainage. No punch list items were identified at substantial completion. However, BRaDD has not paid any part of the Retainage to Unicorp.

BRaDD admitted that it accepted the Certificates of Substantial Completion and that the surety on Unicorp's bond consented to the release of retainage but denied the remainder of the asserted material fact, stating "punch list items were identified at substantial completion and thereafter, and which items remain to be

3

completed." In line with this denial, BRaDD contends that Unicorp is not entitled to the retainage at this time because Article 5 of the Construction Contract conflicts with Section 9.8.5 of the General Conditions and, therefore, Article 5 governs the release of the retainage.

Articles 1 and 2 of the Construction Contract provide that the parties' contract consists of the Construction Contract and additional documents identified in Article 2(A)(2), which include the General Conditions. Article 2(A)(2) (emphasis added) further provides that "*If any of the provisions of this Agreement conflict with the terms contained in the General Conditions, the provisions in this Agreement shall control.*"

Article 5 of the Construction Contract is entitled "Requisition and Payment Procedures" and provides the procedures for Unicorp to obtain payments for its work. Article 5(A) provides for monthly requests for work that the contractor performed "during the preceding month," while section (B) provides "final payment" for "all unpaid obligations contracted in connection with the Work performed under this Contract," and lastly, section (C) provides for payment of "the balance due to Contractor." BRaDD asserts that the "balance due" includes the retainage and that Unicorp can only collect payment of the "balance due" after the following conditions set forth in Article 5(C) have been satisfied:

> The balance due to Contractor hereunder shall be payable upon the expiration of thirty (30) days after the Work hereunder is fully completed, provided the following have occurred: (1) all Work hereunder requiring inspection by Governmental Authorities having jurisdiction has been inspected and approved by such authorities and by the rating or inspection organization, bureau, association or office having jurisdiction; (2) all certificates of occupancy, or other approvals, with respect to the Project have been issued by Governmental Authorities; (3) Permission(s) to Occupy (HUD-92485) for all units of the Project have been issued by HUD; (4) where applicable, HUD shall have approved Contractor's Certificate of Actual Cost; (5) as-built Drawings and Specifications, the as-built survey and all warranties shall have been delivered to Owner; and (6)

all executed final advance documents required by HUD have been submitted.

Unicorp counters that Article 5(C) pertains to final payment only, not payment of the retainage. This argument overlooks the construction of Article 5 and treats paragraphs (B) and (C) thereof as a single provision. Article 5(C) addresses "balance due," not "final payment." In other words, Unicorp equates the term "final payment" to "balance due." Unicorp further asserts that because Article 5(C) does not contain the term "retainage," it does not pertain to the retainage withheld pursuant to the Retainer Reduction Rider as set forth in Article 5(A). Unicorp then points out that Section 9.8.5 of the General Conditions is the only provision of the Contract Documents that addresses the release of the "retainage" and concludes that there is no conflict between the Construction Contract and Section 9.8.5 of the General Conditions because it specifically uses the term "retainage."

Unicorp's argument overlooks the difference between Article 5's use of the terms "final payment" and "balance due." Article 5(B) governs Unicorp's request to receive "final payment," while Article 5(C) governs the "balance due." Contrary to Unicorp's argument, "balance due" in Article 5(C) has been held to be "retained amounts," and, as such, it is not "final payment." In *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 374 (D.C. Cir.1976), as here, "The Construction Contract authorized the payment of monthly draws incremental payments based upon completed construction, but minus a 10% retention or 'holdback'." The court concluded that these "retained amounts" are "holdback" that "'shall be payable' to the contractor . . . after construction has been completed provided certain preconditions were met." *Id.* at 375, citing Article 3(C) of the Construction Contract at issue therein, which is identical to Article 5(C) of the

Construction Contract at issue here. *See also*, *Van-Tex, Inc. v. Pierce*, 703 F.2d 891 (5th Cir. 1983).

The court's determination in *Trans-Bay*, 551 F.2d 370, gives meaning to all three terms of payment identified in Article 5(A), (B), and (C), whereas Unicorp's interpretation of the terms "final payment" and "balance due" effectively eliminates one of those terms. For these reasons, we conclude that the terms of Section 9.8.5 of the General Conditions conflict with the terms of Article 5 of the Contract and, therefore, Article 5 of the Contract controls the release of the retainage.

BRaDD established that Section 5 of the Construction Contract governs the release of the retainage. Having based its claim to obtain partial release of the retainage solely on Section 9.8.5 of the General Conditions, Unicorp did not prove that it satisfied the requirements of Section 5 of the Construction Contract. Accordingly, BRaDD has established that a genuine issue of material fact exists as to whether Unicorp is entitled to recover $3,214,711 for retainage at this time.

## DISPOSITION

For these reasons, the judgment of the trial court granting partial summary judgment in favor of Unicorp, LLC and against BRaDD, LLC in the amount of $3,214,711, together with legal interest thereon from March 28, 2022, is reversed. All costs associated with this appeal are assessed to Unicorp, LLC.

**REVERSED AND REMANDED.**